each court acting exclusively by itself will necessarily tend, most of all others, to introduce discrepancies between the decisions of these numerous tribunals. It must be an occurrence familiar to the experience of judges, that sitting together and hearing the same arguments upon the same statement of the case, their impressions are frequently, in the first instance, exceedingly diverse; and it would be a most rare event for two or more to hear a point really debatable, well discussed at the bar, and yet form within their own minds exactly the same conclusions. It is only by free conference, by mutual study of the question, by explanations and reasonings, reiterated with each other, and cautiously reviewed with an earnest anxiety to arrive at the correct result, that a common opinion can ordinarily be attained between men of equal intelligence, and examining the same subject from one point of view, and with advantages common to all. In the thirty district courts of the United States, officiating under circumstances of extraordinary diversity in respect to each other, the chances of opposing judgments upon the same questions must almost equal in number the points to be decided. And it certainly argues creditably for the perspicuity and precision of our statute laws, that they can be administered in so many tribunals, over a country so wide in extent, with practically so few and unimportant collisions in their construction.

Considering these debtors as continuing indebted and partners up to the time the petition was filed, I shall hold that their mere insolvency, without evidence of fraudulent acts, would not be sufficient to sustain the proceedings; but that they are liable to be decreed bankrupts upon the acts of fraud committed by their partnership, anterior to the passage of the bankrupt act, as set forth in the petition.

## Case No. 6,856a.

### In re HULL et. al.

[See Case No. 6,856.]

## Case No. 6,857.

### In re HULL.

[14 Blatchf. 257;[1] 18 N. B. R. 1.]

Circuit Court, E. D. New York. June 11, 1877.

BANKRUPTCY—RIGHTS OF PRIOR EXECUTION CREDITOR—LIEN OF EXECUTION.

1. C. docketted a judgment against H., and an execution thereon was delivered to the sheriff, who at the time had in his possession the goods of H., by virtue of an attachment issued in a suit against H. by W. Afterwards, H. filed a petition in bankruptcy and was adjudged a bankrupt, and J. was appointed his assignee. Independently of the attachment, the sheriff took no possession of the goods of H. until aft-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

er the petition in bankruptcy was filed. C. applied to the district court to be paid the amount of his judgment in full, but his application was denied: *Held*, on review, that C. was entitled to be paid his claim in full.

[Cited in Re Wheeler, Case No. 17,490; Claridge v. Kulmer, 1 Fed. 402; Crane v. Penny, 2 Fed. 189.]

2. The property being in the possession of the sheriff under the attachment, the lien of the execution attached to it, and remained, although the operation of the bankruptcy proceedings was to vacate the attachment.

3. The case of In re Beisenthal [Case No. 1,236] distinguished.

[See Bartlett v. Russell, Case No. 1,080.]

[In bankruptcy. In the matter of Arthur A. Hull.]

Thomas L. Robinson, for assignee in bankruptcy.

Taylor & Fowler, for Collins, Downing & Co.

HUNT, Circuit Justice. This is a petition for a review of the decision of the district court, in which the conceded facts are as follows: A petition was presented to the district court, and a motion made thereon, by Collins, Downing & Co., for an order directing John C. Cutter, the assignee of the bankrupt, to pay to Collins, Downing & Co. the amount of their claim in full, upon the following statement of facts, agreed upon by the counsel of the respective parties: "On the 9th of September, 1873, at 12.25 p. m., Collins, Downing & Co. docketted in the office of the clerk of Kings county, a judgment against the bankrupt for $158.62. At 12.30 p. m., of that day, an execution was delivered to the sheriff of Kings county on said judgment. At the time of the delivery of said execution to the sheriff, the sheriff was in possession of the goods of the bankrupt, by virtue of an attachment issued in a suit begun against the bankrupt by West, Call & Whittemore. At 1.20 p. m., of the same day, the petition of the bankrupt to be adjudicated a bankrupt was filed. No actual possession of the bankrupt's property was taken by the sheriff, independently of the attachment of West, Call & Whittemore, until after the filing of the petition. There are no other claims against the estate claiming security or priority, and there are assets in the hands of the assignee sufficient to pay this claim." The district court denied the motion. [On the 3d day of May, 1876, at a special term of the said United States district court, the Hon. Charles L. Benedict being present, an order was entered to the following effect, viz.: "On a motion having been made by Collins, Downing & Co. for an order directing John C. Cutter, the assignee of said bankrupt, to pay to said Collins, Downing & Co. the amount of their claim in full, now upon said motion and stipulation of admission as to facts made by the solicitors of the respective parties, and upon all the proceedings herein, after hearing Taylor & Fowler, solicitors for the petitioners, Col-